UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH THE
CELLULAR DEVICE ASSIGNED CALL
NUMBER (347) 862-8827, WITH
INTERNATIONAL MOBILE SUBSCRIBER
IDENTITY 310260372379416, THAT IS
STORED AT PREMISES CONTROLLED BY
T-MOBILE

Case No. _____
22-SW-397-PAS

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Joseph Iannelli, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for

information associated with a certain cellular telephone assigned call number (347) 862-8827,

with International Mobile Subscriber Identity 310260372379416 ("the SUBJECT PHONE"), that

is stored at premises controlled by T-Mobile, a wireless telephone service provider

headquartered at Parsippany, New Jersey.  The information to be searched is described in the

following paragraphs and in Attachment A.  This affidavit is made in support of an application

for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require T-Mobile to disclose to the

government copies of the information further described in Section I of Attachment B.  Upon

receipt of the information described in Section I of Attachment B, government-authorized

persons will review the information to locate items described in Section II of Attachment B.

2.      I have been a Task Force Officer (TFO) with the Drug Enforcement

Administration (DEA) since 2013 and am currently assigned to the DEA Providence District

Office.  I am also a member of The South Kingstown Police Department and have been

continuously employed by The Town of South Kingstown since 2006.  Prior to being sworn in as

a TFO I held the rank of Detective with The South Kingstown Police Department. As a detective I was responsible for investigating and prosecuting all types of criminal narcotic related activity being carried out by traditional and non-traditional organized crime organizations, members and their associates, in addition to investigating any and all crimes which violated the laws of the State of Rhode Island. I have attended DEA's Basic Narcotics School. Since being sworn as a Task Force Officer with the DEA I have participated in countless investigations relating to the possession and distribution of fentanyl, cocaine, heroin, marijuana as well as other controlled substances. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841 and 846 (distribution of controlled substances and conspiracy to distribute controlled substances), and 21 U.S.C. § 843(b) (using a communication facility to commit, cause or facilitate the commission of a drug felony) have been committed, are being committed, and will be committed by Jose Manuel Rosario Mella aka Luis Cortes.  There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, or fruits of these crimes as further described in Attachment B.

## PROBABLE CAUSE

5.      Several months prior to August 2020, members of the Drug Enforcement Administration-Providence Resident Office[1] engaged in an investigation into suspected narcotics trafficking being conducted by an individual known at that time as Luis Cortes, DOB: XX/XX/1971 from his residence at 698 Centerville Road, Warwick, RI.[2]  Agents used a variety of investigative methods, including the controlled purchase of narcotics from CORTES by a Confidential Source working under the direct supervision of agents.  During the several months of investigation, agents established that Cortes regularly utilized a cellular phone to communicate and operate his narcotics trafficking.  For example, the aforementioned controlled purchases were arranged by a cooperating witness working with agents making contact with CORTES at his cellular telephone.  On another occasion (in July 2020), Cortes passed $100,000 USC to a cooperator working with DEA for the purpose of laundering the suspected drug proceeds.  CORTES brought a cellphone to the meeting and used the cellphone to direct the cooperator to his location at the meeting spot.  Court authorized tracking of the SUBJECT PHONE established that CORTES regularly maintained that phone at his Centerville Road residence during July 2020.

6.      On July 31, 2020, agents sought and obtained three search warrants from United States Magistrate Judge Lincoln D. Almond.  The warrants authorized the searches of: (i) the single-family residence of CORTES at 698 Centerville Road, Warwick, Rhode Island, ("698

---

[1] The Providence office of the Drug Enforcement Administration was known as the Providence Resident Office.  It has since been renamed the Providence District Office.

[2] As discussed herein, post-arrest investigation established the actual identity of Cortes to be Jose Manuel Rosario Mella.  Hereafter when I speak about Cortes or Rosario Mella, I am referring to the same individual arrested by DEA on August 12, 2020.

Centerville Road"); (ii) a 2016 Mazda SUV, color black, bearing Rhode Island vehicle registration KW374, registered to Darinel A Ramirez DOB XX/XX/74, 54 Tremont St Apt 1 Central Falls RI 02863, and regularly used by CORTES ("Mazda SUV"), and (iii) a 2007 BMW sedan 335i, color black, bearing Massachusetts vehicle registration 7LD967, registered to CORTES and regularly operated by him ("BMW 335i").

7.      During the morning of August 12, 2020, agents observed CORTES leave 698 Centerville Road and enter the BMW 335i which was parked in the driveway.  A short distance from the residence, agents stopped the BMW 335i in order to execute the search warrant for the vehicle.  The Devices were with Cortes in the vehicle and seized by officers on the scene.  Prior to searching the vehicle, a certified narcotics detection canine conducted a sniff of the exterior of the vehicle.  The canine alerted to the presence of narcotics odors at the vehicle.  During the subsequent search of the interior of the vehicle, agents located an after-market hide behind the front passenger seat.  This compartment was large enough to conceal more than one kilogram of narcotics.  Agents searched a child safety seat also located in the BMW 335i.  During the search agents identified an after-market concealed compartment in the child safety seat.  This hide was large enough to conceal a kilogram of narcotics.  Photographs were taken of each of these compartments.

8.      Near the time of the stop of the motor vehicle, agents executed the search warrant at 698 Centerville Road.  Present in the single-family residence were an adult female and two young female children.  Based upon statements made by the adult woman, agents determined she was in a romantic relationship with CORTES and the two children were hers.

9.      During the execution of the search warrant at 698 Centerville Road, agents located and seized the following items from the residence:

4

(a) Approximately one kilogram of suspected heroin wrapped in dark-colored tape/plastic-this was located and seized from the top shelf of a first floor closet at the residence.  A field test confirmed the presumptive presence of heroin.  The gross weight of the suspected heroin (including an evidence bag) was 1079 grams.  Later forensic testing at DEA's Northeast Regional Laboratory confirmed this to be approximately 1002 grams of heroin.

(b) A 9mm semi-automatic Glock pistol-this was located and seized from a concealed compartment in the master bathroom that was connected to the master bedroom.  The gun was in a carrying case with two magazines.  One magazine was fully loaded and entered into the weapon.

(c) Approximately $337,000 United States currency.  Most of this money was also located in the same concealed compartment in the master bathroom where the pistol was located.

(d) Three (3) kilo presses located and seized from: basement; first floor and a closet in the master bedroom of the residence-these devices are used to compress a kilogram of narcotics which aids in the transportation and distribution of kilogram amounts of a controlled substance.

(e) Items used in the packaging of kilograms of controlled substances which included: three (3) large rolls of cellophane wrapping located on a bureau in the master bedroom and a backpack containing two (2) scales, a sifter, a grinder and a mixer located in a closet also in the master bedroom.

(f) a Dominican Republic birth certificate in the name of Rosario Mella.

5

10.     Up until and through the time of arrest, agents identified the target of the investigation as Luis CORTES.  Agents obtained a MA operator's license for CORTES, DOB: XX/XX/1971.  They observed the operator's license photograph and a description of CORTES on the license matched the appearance and description of the target of the investigation. Additionally, electric records for 698 Centerville Road are in the name of Luis CORTES.

11.     At the time of arrest, CORTES maintained to agents from the DEA-PDO that his name was Luis CORTES.  Agents then obtained images of the fingerprints of CORTES and transmitted those images to the FBI for comparison against known persons.  The FBI confirmed that the fingerprinted person was known as both Danny Vasquez and Alberto Diaz with dates of birth including: 09/28/1966; 11/30/1970 and 11/30/1971.  This FBI report listed a previous address of 1168 Sheridan Avenue, Bronx, NY.  Additionally, the FBI report identified arrests in New York in 1997, 1998 and 2002.

12.     In furtherance of the investigation, I sought assistance from law enforcement officials in the Dominican Republic to positively identify CORTES aka Vasquez aka Diaz.  I obtained a Dominican Republic identification document, in the name of Jose Manuel Rosario Mella.  The photograph on that identification matched the appearance of the individual who represented himself to DEA as Luis Cortes at the time of his August 2020 arrest.  A comparison of fingerprints maintained in the Dominican Republic for Rosario Mella matched the fingerprint impressions obtained from CORTES at the time of his arrest by DEA in August 2020.

13.     Additionally, based on my training and experience and my participation in this and other controlled substance investigations, I know that it is common for drug dealers to use wireless cellular telephones to facilitate their drug distribution operations.  I also know that drug trafficking is an illicit business and an ongoing process requiring the development, use and

6

protection of a communication network to facilitate daily drug distribution.  Drug dealers use various methods to thwart law enforcement detection, often using multiple wireless cellular telephones for different purposes, some to communicate with suppliers, others to communicate with customers and still others to communicate with accomplices and frequently change cellular phones.  It is common in drug trafficking investigations to seize multiple telephones from a single drug trafficking offender.  Even when a drug trafficker maintains a personal telephone to communicate with family and friends, those telephones often contain evidence relevant to the criminal investigation, for example, scheduling information, travel arrangements, photographs, GPS location data and other information.

14.     In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records."  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

15.     Based on my training and experience, I know that T-Mobile can collect cell-site data about the SUBJECT PHONE.  I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

16.     Based on my training and experience, I know that wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service.  I also know that wireless providers such as T-Mobile typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business.  In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

17.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

18.     I further request that the Court direct T-Mobile to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.  Because the warrant will be served on T-Mobile, who will then compile the requested

8

records at a time convenient to it, reasonable cause exists to permit the execution of the

requested warrant at any time in the day or night.

Respectfully submitted,

JOSEPH IANNELLI
Task Force Officer
Drug Enforcement Administration

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by **Sworn telephonically and signed electronically** (*specify reliable electronic means*).

December 14, 2022
Date

Judge's signature

**Providence, Rhode Island**
City and State

**Patricia A. Sullivan, USMJ**
Magistrate Judge Patricia A. Sullivan

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number (347) 862-8827, with International Mobile Subscriber Identity 310260372379416 ("the Account"), that is stored at premises controlled by T-Mobile, a wireless telephone service provider headquartered at Parsippany, New Jersey ("the Provider").

## ATTACHMENT B

### Particular Things to be Seized

**I.  Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period July 1, 2020 to August 12, 2020:

    a.  The following information about the customers or subscribers of the Account:

        i.  Names (including subscriber names, user names, and screen names);

        ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.  Local and long distance telephone connection records;

        iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.  Length of service (including start date) and types of service utilized;

        vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

2

        viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records.

    b.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

        i.  the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

        ii.  information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 21 U.S.C. §§ 841 and 846 (distribution of controlled substances and conspiracy to distribute controlled substances), and 21 U.S.C. § 843(b) (using a communication facility to commit, cause or facilitate the commission of a drug felony) that have been committed, are being committed, and will be committed by Jose Manuel Rosario Mella aka Luis Cortes during the period July 1, 2020 to August 12, 2020.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are

authorized to review the records produced by the Provider in order to locate the things

particularly described in this Warrant.